**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Andres Damian,<br>Plaintiff(s),<br>v.<br>American National Property and Casualty Company,<br>Defendant(s). | Case No. 2:25-cv-00964-NJK<br>**Order**<br>[Docket No. 45] |

Pending before the Court is Defendant's motion for partial summary judgment.[1] Docket No. 45. Plaintiff filed a response in opposition. Docket No. 46. Defendant filed a reply. Docket No. 49. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the motion for partial summary judgment is **GRANTED**.

## I. BACKGROUND

This case involves Plaintiff's allegations of breach of contract, breach of implied covenant of good faith and fair dealing, violation of Nevada Unfair Claims Practices Act, and negligence/gross negligence arising from an insurance dispute over a car accident claim resulting in bodily injuries to Plaintiff. *Id.* at 7-11. Plaintiff alleges punitive damages in excess of $15,000. *Id.* at 12. This case was properly removed to federal court on the basis of diversity jurisdiction. *Id.* at 2.

## II. STANDARDS

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

[1] In some of the documents cited herein, the native pagination does not align with the CMECF pagination. The Court cites to the CMECF pagination. Additionally, Defendant improperly filed its motion and exhibits as one document and its reply and exhibits as one document. *See* LR IA 10-3; IC 2-2(a)(3). All future filings must comply in full with the Court's Local Rules.

of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[2] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

A. Breach of Implied Covenant of Good Faith and Fair Dealing – Insurance Bad Faith

Nevada law recognizes the existence of an implied covenant of good faith and fair dealing in every contract, and a party breaches that covenant when it acts in bad faith. *A.C. Shaw Construction v. Washoe County*, 784 P.2d 9 (Nev. 1989). "Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Guaranty Nat. Ins. Co. v. Potter*, 912 P.2d 276, 272 (1996). It is not enough to show that, in hindsight, an insurer acted unreasonably; rather, a plaintiff must show that the insurer knew or recklessly disregarded that it was acting unreasonably. *Fernandez v. State Farm Mut. Auto. Ins. Co.*, 338 F. Supp. 3d 1193, 1200 (D. Nev. 2018). An insurer does not act in bad faith merely because it disagrees with the claimant's estimation of his injuries or delays paying out benefits until it receives relevant documents or expert opinions. *See Amini v. CSAA Gen. Ins. Co.*, 2016 WL 6573949, at *4 (D. Nev. Nov. 4, 2016) (granting summary judgment to insurer on bad faith

[2] Regarding controlling law, federal courts exercising diversity jurisdiction apply federal procedural law and state substantive law when addressing state law claims. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

claim even though it delayed in making settlement offers and relied only on expert opinions to reject the plaintiff's offer).

The Supreme Court of Nevada has defined bad faith as "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009) (internal citation omitted). "When there is a genuine dispute regarding an insurer's legal obligations, the district court can determine [as a question of law] if the insurer's actions were reasonable." *Id.* at 329.

B. Violation of Nevada Unfair Claims Practices Act

Under Nevada Law's adoption of the Unfair Practices Act, "an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as unfair practice." N.R.S. 686A.310(2). Subsection 1 describes, in relevant part, the following acts:

> **(c)** Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.
>
> **(e)** Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.
>
> **(f)** Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.
>
> **(n)** Failing to promptly provide a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

N.R.S. 686A.310(1).

C. Punitive Damages

Under Nevada law, tort claims may provide a basis for an award of punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." N.R.S. 42.005(1). Oppression is present where the plaintiff has been subjected to cruel and unjust hardship in conscious disregard of his rights.

Nev. Rev. Stat. Ann. § 42.005 (notes to decisions citing *Jeep Corp. v. Murray*, 101 Nev. 640, 708 P.2d 297, 1985 Nev. LEXIS 480 (Nev. 1985)).

"Whether the record contains sufficient evidence to justify an award of punitive damages is a question of law, and for the court to decide. But where the necessary factual basis for punitive damages exists, the amount of the award rests with the sound discretion of the jury." Nev. Rev. Stat. Ann. § 42.005 (notes to decisions citing *Austin v. C & L Trucking, Inc.*, 610 F. Supp. 465, 1985 U.S. Dist. LEXIS 21219 (D. Nev. 1985)).

## III. ANALYSIS

### A. Breach of Implied Covenant of Good Faith and Fair Dealing – Insurance Bad Faith

Defendant submits that Plaintiff's evidence, as a matter of law, does not support a bad faith claim because the case is nothing more than a dispute over how much Plaintiff should be paid on his Underinsured Motorist ("UIM") claim. Docket No. 45 at 7-12. Although an insurer does not act in bad faith merely because it disagrees with the insured's claim estimation, "summary judgment is not warranted on an insurance bad faith claim simply because the question of liability was 'fairly debatable' at the time of the denial." *Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1053-55 (D. Nev. 2017); *Luna v. State Farm Mut. Auto. Ins. Co.*, 2016 U.S. Dist. LEXIS 52842, *8.

In response, Plaintiff submits that Defendant acted in bad faith for a multitude of reasons, not only those pertaining to the value of the case. Docket No. 46. Plaintiff submits that Defendant acted in bad faith when (1) Defendant internally valued Plaintiff's claim to be over 2.5x higher than what Defendant offered in settlement negotiations, *id.* at 3, 10; (2) Defendant did not reconcile its settlement offer with pre- and post- medical examinations, *id.* at 7; (3) Defendant delayed eighteen months before obtaining a medical examination, resulting in a failure to timely investigate, *id.* at 8; and (4) Defendant exclusively relied on its own retained expert and disregarded the examination executed by Plaintiff's treating physician, *id.* at 9. In reply, Defendant addresses Plaintiff's response and reiterates its arguments as set forth in its motion. Docket No. 49.

The Court finds that, looking at the evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Defendant acted in bad faith. The evidence demonstrates that

Defendant quickly made an offer to Plaintiff after his original demand and that Defendant re-analyzed and adjusted its offer after Plaintiff submitted more medical expenses. Additionally, Defendant arranged for an Independent Medical Examination ("IME") of Plaintiff after Plaintiff submitted over $100,000 in past medical specials and over $600,000 in future medical specials. Docket No. 45 at 2-4; Docket No. 49 at 3-4.

Defendant additionally submits that Plaintiff inaccurately characterizes Defendant's internal value of the case by claiming the $375,000 reserve is what Defendant owed Plaintiff rather than a valuation "pertaining to all aspects of adjusting Plaintiff's claim, including expenses." *Id.* at 2. Defendant cites N.R.S. 681.050(1) to support this argument. *Id.* The Court is not persuaded by Plaintiff's argument that the reserve constituted the fair value of the case. Docket No. 46 at 7; Docket No. 46-2 at 10.[3]

Defendant also submits that it did not act in bad faith because Plaintiff would have never accepted a settlement offer less than the $1 million policy limit, even if Defendant would have offered $375,000. Docket No. 49 at 5-6; Docket No. 45 at 11-12. Defendant submits that its settlement offer was more than Defendant's medical expert opined the case value to be, and that Plaintiff's critique of the basis of the offer is not qualified, because it is opined from Plaintiff's liability expert rather than another medical expert. Docket No. 49 at 2-3, 6. Defendant further submits that Plaintiff was wrong in arguing Defendant only relied on its own retained expert because its expert relied on medical tests performed by other medical professionals and statements made by Plaintiff. *Id.* at 5. Finally, Defendant submits that there was no delay in this case because Plaintiff's continuing treatment and ongoing communication with Defendant about his condition led to an adjusted timeline to determine the claim value. *Id.* at 3. Based on the evidence presented by both sides, the Court agrees.

---

[3] Plaintiff submits, without providing the relevant evidence, that Defendant's adjuster and supervisor "agreed that the reserve should be $375,000 and that they should settle up to $375,000." Docket No. 46-2 at 10. Plaintiff presents no competent evidence to demonstrate that a reserve, meant to cover settlement and expenses, constitutes the fair value of a case. This distinction is particularly relevant in a case such as this, where Plaintiff demanded only the million-dollar policy limit; therefore, an offer of $375,000 is itself far below Plaintiff's demand.

The Court finds that Plaintiff has failed to present any evidence to support a finding that Defendant acted unreasonably, knew or recklessly disregarded that there was no reasonable basis for its conduct, or lacked a reasonable basis for its evaluation of the claim.

Accordingly, the Court **GRANTS** summary judgment on the breach of implied covenant of good faith and fair dealing claim.

B. Violation of Nevada Unfair Claims Practices Act

Defendant seeks summary judgment on this claim because, it submits, it did not engage in unfair claims practices. Docket No. 45 at 11-12. Defendant submits that it thoroughly investigated Plaintiff's claim, had a reasonable and logical basis for its value of Plaintiff's claim, communicated with Plaintiff's counsel, and made reasonable efforts to settle. *Id.* at 12. Defendant further submits that it did not engage in unfair claims practices because Plaintiff would have never accepted a settlement offer less than the $1 million policy limit, even if Defendant would have offered $375,000. *Id.* at 11-12; Docket No. 49 at 5-6.

In response, Plaintiff submits that Defendant engaged in unfair claims practices because Defendant did not timely obtain medical records, did not request medical authorization for over seven months after retaining outside counsel, did not conduct a medical exam for eighteen months, did not reconcile conflicting expert opinions, offered less than its own internal valuation and post-exam assessment, and overrode the adjuster's $375,000 offer recommendation without any documented basis. Docket No. 46 at 11.

Nevada Law allows damages for insureds when insurers fail to adopt and implement reasonable standards for prompt investigation, N.R.S. 686A.310(1)(c), fail to effectuate prompt, fair and equitable settlements, N.R.S. 686A.310(1)(e), compel insureds to litigate to recover amounts due by offering substantially less than amounts ultimately recovered, N.R.S. 686A.310(1)(f), and fail to provide insureds with a reasonable explanation of the basis in the insurance policy for its offer to settle a claim, N.R.S. 686A.310(1)(n).

The Court finds that, in looking at the evidence in the light most favorable to Plaintiff, Plaintiff cannot demonstrate that Defendant engaged in unfair claims practices. Therefore, the

Court **GRANTS** summary judgment on the violation of Nevada Unfair Claims Practices Act claim.

C. Punitive Damages

A plaintiff must prove "by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'" *Bongiovi v. Sullivan*, 138 P.3d 433, 450–51 (Nev. 2006) (quoting NRS 42.005(1)). Plaintiff fails to present evidence that Defendant's conduct rose to the high level required for punitive damages. Defendant reviewed medical records, expert reports, and conducted an IME of Plaintiff. Defendant also re-analyzed its offer whenever new information was presented by Plaintiff.

Accordingly, the Court **GRANTS** summary judgment on Plaintiff's prayer for punitive damages in excess of $15,000.

## IV. CONCLUSION

Accordingly, as stated above, Defendant's motion for partial summary judgment is **GRANTED**. Docket No. 45.

IT IS SO ORDERED.

Dated: September 21, 2026

Nancy J. Koppe
United States Magistrate Judge